**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, JACK RAMEY, DANIEL UMPA, and JANE RUH, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) ) ) | Case No: 1:19-cv-01610 |
| v. | ) ) | Judge Andrea Wood |
| THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO THE HOMESERVICES DEFENDANTS' MOTIONS
TO COMPEL ARBITRATION**

11475923v1/016286

## TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................1

BACKGROUND .....................................................................................................3

ARGUMENT ..........................................................................................................7

I.      THE HSA DEFENDANTS OFFER NO EVIDENCE THAT ANY CLASS MEMBER SIGNED AN AGREEMENT CONTAINING AN ARBITRATION CLAUSE ..................................................................7

II.      THERE IS NO CLEAR AND UNMISTAKABLE EVIDENCE THAT THE PARTIES DELEGATED QUESTIONS OF NON-SIGNATORY ARBITRABILITY ......................................................................................9

III.      UNDER EACH APPLICABLE STATE'S LAW AND CONTRACT TERMS, THE HSA DEFENDANTS CANNOT COMPEL ARBITRATION ....................................................................................16

       A.   Maryland – Long & Foster ....................................................17

       B.   Virginia – Long & Foster .......................................................20

       C.   District of Columbia – Long & Foster....................................20

       D.   Minnesota – Edina, Midwest Preferred ..................................21

       E.   Wisconsin – Edina, Lovejoy Realty........................................23

       F.   Florida – EWM, Florida Realty ..............................................24

       G.   Pennsylvania – Fox & Roach..................................................27

       H.   Delaware – Fox & Roach.........................................................29

       I.   Texas – Ebby Halliday.............................................................30

       J.   Arizona – Long Realty.............................................................31

       K.   North Carolina – Preferred Carolinas ......................................34

IV.      ARBITRATION WITH THE HSA DEFENDANTS WOULD NOT LIMIT THE SCOPE OF THE CLASSES ............................................36

CONCLUSION.......................................................................................................37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.D. v. Credit One Bank, N.A.*,
  885 F.3d 1054 (7th Cir. 2018) ............................................................................1

*Abdurahman v. Prospect CCMC LLC*,
  42 F. 4th 156 (3d Cir. 2022) ...............................................................................28

*Adherent Labs., Inc. v. DiPietro*,
  2018 WL 3520843 (Minn. Ct. App. July 23, 2018)............................................22

*Alvarez v. Experian*,
  2023 WL 2519249 (E.D.N.Y. Mar. 15, 2023) ....................................................19

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
  935 F.3d 274 (5th Cir. 2019) .........................................................................13, 14

*Arthur Andersen LLP v. Carlise*,
  556 U.S. 624 (2009)............................................................................................16

*Bakon v. Rushmore Serv. Ctr. LLC*,
  2017 WL 2414639 (E.D.N.Y. June 2, 2017) ......................................................19

*Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*,
  249 So. 3d 765 (Fla. Dist. Ct. App. 2018) .........................................................26

*Benson v. Casa De Capri Enterprises, LLC*,
  502 P.3d 461 (Ariz. 2022)...................................................................................32

*Bigger v. Facebook*,
  947 F.3d 1043 (7th Cir. 2020) ..............................................................................7

*U.S. ex rel. Birckhead Elec., Inc. v. James W. Ancel, Inc.*,
  2014 WL 2574529 (D. Md. June 5, 2014)...........................................................18

*BlackBerry Ltd. v. Nokia Corp.*,
  2018 WL 1525797 (D. Del. Mar. 28, 2018) ........................................................29

*Blanton's v. Domino's Pizza Franchising LLC*,
  962 F.3d 842 (6th Cir. 2020) .........................................................................12, 13

*Bultemeyer v. Sys. & Servs. Techs., Inc.*,
  2012 WL 4458138 (D. Ariz. Sept. 26, 2012).......................................................32

11475923v1/016286

*Burnett v. NAR*,
    No. 4:19-cv-332, Dkt. 218 (W.D. Mo. Feb. 28, 2020) ........................................................19

*Burnett v. Nat'l Ass'n of Realtors*,
    615 F. Supp.3d 948 (W.D. Mo. 2022) ........................................................2, 13, 15

*Cartagena Enters. Inc. v. J. Walter Thompson Co.*,
    2013 WL 5664992 (S.D.N.Y. Oct. 16, 2013) ........................................................16

*CCC Intelligent Sols. Inc. v. Tractable Inc.*,
    36 F. 4th 721 (7th Cir. 2022) ........................................................11

*Cheek v. United Healthcare of Mid-Atlantic, Inc.*,
    835 A.2d 656,669 (Md. 2003) ........................................................18

*Colon v. Conchetta*,
    2017 WL 2572517 (E.D. Pa. June 14, 2017) ........................................................29

*Dickerson v. Longoria*,
    995 A.2d 721 (Md. 2010) ........................................................18, 19

*DSMC, Inc. v. Convera Corp.*,
    273 F. Supp. 2d 14 (D.D.C. 2002) ........................................................21

*Epes Logistics Servs., Inc. v. Marcuslund*,
    861 S.E.2d 924 (N.C. Ct. App. 2021) ........................................................34

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ........................................................10

*Giron v. Subaru of Am., Inc.*,
    2022 WL 17130869 (N.D. Ill. Nov. 21, 2022) ........................................................12

*GNH Grp. v. Guggenheim Holdings, LLC*,
    2020 WL 4287358 (D. Del. July 27, 2020) ........................................................12, 30

*Goergen v. Black Rock Coffee Bar, LLC*,
    2023 WL 142911 (D. Or. Jan. 10, 2023) ........................................................12

*Gunson v. BMO Harris Bank, N.A.*,
    43 F. Supp. 3d 1396 (S.D. Fla. 2014) ........................................................26

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ........................................................10

*In re Humana Inc. Managed Care Litig.*,
    285 F.3d 971 (11th Cir. 2002) ........................................................25

iii

*Isaak v. Mass. Indem. Life Ins. Co.*,
   623 P.2d 11 (Ariz. 1981) ........................................................................33

*It Works Mktg., Inc. v. Melaleuca, Inc.*,
   2021 WL 1650266 (M.D. Fla. Apr. 27, 2021) ................................25, 26

*Jackson v. Home Depot, USA, Inc.*,
   857 S.E.2d 321 (N.C. Ct. App. 2021) .....................................................35

*Jody James Farms, JV v. Altman Grp., Inc.*,
   547 S.W.3d 624 (Tex. 2018) ...................................................................30

*Johnson v. Parsley Energy Operations, LLC*,
   2022 WL 2027963 (W.D. Tex. May 3, 2022) ...................................12, 13

*JTF Aviation Holdings Inc. v. CliftonLarsonAllen LLP*,
   472 P.3d 526 (Ariz. 2020) ......................................................................32

*Judge v. Unigroup, Inc.*,
   2017 WL 3971457 (M.D. Fla. Sept. 8, 2017) ........................................20

*K.F.C. v. Snap Inc.*,
   29 F. 4th 835 (7th Cir. 2022) ...........................................................11, 13

*Kennedy v. ADF MidAtlantic, LLC*,
   2015 WL 6596918 (D. Md. Oct. 27, 2015) ............................................18

*Kipp v. Weyerhauser Co.*,
   354 F. Supp. 3d 622 (E.D. Pa. 2018) ....................................................28

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) .........................................................11, 16

*Lavigne v. Herbalife, ltd.*,
   967 F.3d 1110 (11th Cir. 2020) ...............................................11, 12, 16

*Leidel v. Coinbase, Inc.*,
   729 F. App'x 883 (11th Cir. 2018) .........................................................25

*Meadows v. Dickey's Barebecue Restaurants, Inc.*,
   144 F. Supp. 3d 1069 (N.D. Cal. 2015) ................................................10

*In re Merrill Lynch Tr. Co. FSB*,
   235 S.W.3d 185 (Tex. 2007) .............................................................30, 31

*Miron v. BDO Seidman, LLP*,
   342 F. Supp. 2d 324 (E.D. Pa. 2004) ....................................................28

iv

*Morgan v. Sundance, Inc.*,
  142 S. Ct. 1708 (2022) ........................................................................................... 1

*Morsberger v. ATI Holdings, LLC*,
  2023 WL 2711754 (N.D. Ill. Mar. 30, 2023) ........................................................ 18

*Nat'l Oilwell Varco, L.P. v. Sadagopan*,
  2018 WL 27634 (S.D. Tex. Jan. 3, 2018) .............................................................. 12

*Newman v. Plains All Am. Pipeline, L.P.*,
  23 F. 4th 393 (5th Cir. 2022) .......................................................................... 11, 13

*Nolan v. Nolan*,
  568 A.2d 479 (D.C. 1990) ..................................................................................... 20

*Noohi v. Toll Brothers*,
  708 F.3d 599 (4th Cir. 2013) ................................................................................ 18

*O'Connor v. Ford Motor Co.*,
  2023 WL 130522 (N.D. Ill. Jan. 9, 2023) ............................................................ 12

*Onvoy, Inc. v. SHAL, LLC*,
  669 N.W.2d 344 (Minn. 2003) ......................................................................... 21, 22

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
  281 F.3d 629 (7th Cir. 2002) ................................................................................ 35

*Pogue v. Chisholm Energy Operating, LLC*,
  2021 WL 979726 (D.N.M. Mar. 16, 2021) ....................................................... 11, 16

*Raglani v. Ripken Pro Baseball*,
  939 F. Supp. 2d 517 (D. Md. 2013) ...................................................................... 18

*RFB Properties II, LLC v. Deutsche Bank Trust Co.*,
  247 A.3d 689 (D.C. 2021) ..................................................................................... 21

*Robertson v. Enbridge (U.S.) Inc.*,
  2020 WL 9211171 (W.D. Pa. Aug. 4, 2020) .................................................... 13, 16

*ROI Props. Inc. v. Burford Capital Ltd.*,
  2019 WL 1359254 (D. Ariz. 2019) ........................................................................ 33

*SBMH Grp. DMCC v. Noadiam USA, LLC*,
  297 F. Supp. 3d 1321 (S.D. Fla. 2017) ............................................................ 12, 16

*Scheurer v. Fromm Family Foods LLC*,
  863 F.3d 748 (7th Cir. 2017) ...................................................................... 16, 23, 24

11475923v1/016286

*Schoenfeld v. Mercedes-Benz USA, LLC*,
    532 F. Supp.3d 506 (S.D. Ohio 2021) ......................................................12, 13, 16

*Sitzer v. Nat'l Ass'n of Realtors*,
    12 F.4th 853 (8th Cir. 2021) ........................................................................13

*Sitzer v. Nat'l Ass'n of Realtors*,
    2020 WL 2787725 (W.D. Mo. Apr. 10, 2020) ..........................................13

*Skyleasing, LLC v. Tejas Avco Inc.*,
    2006 WL 2290852 (Tex. App. Aug. 10, 2006)..........................................31

*Smith Jamison Constr. v. APAC-Atl., Inc.*,
    811 S.E.2d 635 (N.C. Ct. App. 2018) ........................................................35

*Smith v. Bank of Am., N.A.*,
    2019 WL 11910946 (N.D. Ill. May 15, 2019) ..........................................19

*Stone v. Wells Fargo Bank, N.A.*,
    361 F. Supp. 3d 539 (D. Md. 2019) ...........................................................10

*Sun Valley Ranch 308 Ltd. v. Robson*,
    294 P.3d 125 (Ariz. Ct. App. 2012) ...........................................................33

*Thompson v. Sutherland Global Servs., Inc.*,
    2019 WL 1470238 (N.D. Ill. Apr. 3, 2019) ..............................................19

*Torres v. CleanNet, USA, Inc.*,
    90 F. Supp. 3d 369 (W.D. Pa. 2015) ..........................................................29

*Tuomala v. Regent Univ.*,
    477 S.E.2d 501 (Va. 1996)..........................................................................20

*U.S. Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960).......................................................................................1

*Vincent v. BMW of N. Am.*,
    2019 WL 8013093 (C.D. Cal. Nov. 26, 2019)...................................12, 16

*VSR Fin. Servs. Inc. v. McLendon*,
    409 S.W.3d 817 (Tex. App. 2013).......................................................30, 31

*Weingarten Realty Invs. v. Miller*,
    495 F. App'x 418 (5th Cir. 2012) ..............................................................30

*In re Wholesale Grocery Prod. Antitrust Litig.*,
    707 F.3d 917 (8th Cir. 2013) ..........................................................21, 22, 23

**Statutes**

9 U.S.C. § 4....................................................................................................................................7

## INTRODUCTION

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *U.S. Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). And the party seeking to compel arbitration bears the burden of showing that the opposing party is bound by an enforceable arbitration agreement. *See, e.g.*, *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). While defendants liberally invoke a federal "policy favoring arbitration," the Supreme Court made clear as recently as last year that this "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc*., 142 S. Ct. 1708, 1713 (2022). As such, this federal policy "is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration." *Id*. at 1714.

HomeServices of America, Inc., HSF Affiliates, LLC, and the Long & Foster Companies, Inc. (the "HSA Defendants" or "HSA") have moved to compel arbitration, the third time in this case they have raised arbitration issues. They do so on the basis of various listing agreements and standalone arbitration addenda that their subsidiaries "instruct" agents to use and to which they are indisputably not signatories. The HSA Defendants submit no evidence of an arbitration agreement signed by a *single* class member. Despite the Court's observation that "the relevant arbitration provisions are not identical and many vary materially in language and substance" and the answer to arbitrability questions "could vary depending on the language of the particular arbitration provision and the applicable state's contract law," ECF No. 403, at 52, the HSA Defendants do not analyze the specific language of each provision, and do not address most of the applicable states' laws. Because the HSA Defendants have the burden of proof to show the existence of an

enforceable arbitration agreement, and have utterly failed to meet that burden by providing no evidence and little analysis, the Court need go no further to decide and deny the motions.

To excuse their failure to engage with these issues, the HSA Defendants contend that the Court is prohibited from analyzing the arbitration clauses that they say delegate arbitrability. *See* ECF No. 405. In doing so, they ignore recent Seventh Circuit authority reaffirming that courts have an obligation to determine first whether an enforceable arbitration agreement actually exists—including between a signatory and a non-signatory—before delegating arbitrability. The HSA Defendants ignore the substantial weight of authority from around the country that rejects their argument to the contrary, including the specific cases on which HSA relies. They ignore that the court in *Burnett* rejected the same arguments the HSA Defendants advance here. They ignore that most of the contracts on which they rely have arbitration language that limits delegation (and arbitrability) to disputes between the parties to the arbitration agreements. And then the HSA Defendants fail to perform any analysis whatsoever of the different states' laws and the arbitration provisions in the event the Court disagrees with their delegation argument.

These differences matter. To take just a few examples from the discussion below, several relevant jurisdictions—such as Wisconsin, Virginia, D.C., and Maryland—require a non-signatory seeking to enforce a contract based on equitable estoppel (as HSA argues it can) to show that it has detrimentally relied on the contract. Maryland also holds that unilateral arbitration provisions, like the one in certain Long & Foster contracts, are unenforceable. Pennsylvania requires that a non-signatory show *both* a "close relationship"—such as alter ego or agency—with a signatory party, in addition to the plaintiff's reliance on the terms of the agreement, in order to rely on equitable estoppel. And Florida law holds that even where equitable estoppel may otherwise apply,

a non-signatory cannot compel arbitration if it is excluded from the scope of the arbitration clause by language limiting the clause to "parties" or other defined entities.

Finally, the HSA Defendants do not offer any authority or analysis to address the Court's third question in the class certification order: whether "even if HomeServices can enforce the arbitration agreements, does that compel exclusion of the unnamed class members from participating in a class action that would hold jointly and severally liable not only HomeServices but the other alleged co-conspirator Defendants with whom the unnamed class members have no colorable relationship?" ECF No. 403, at 52. The answer to this question is no. As is evident from the discussion below, and as will be further apparent in Plaintiffs' opposition to the other Defendants' motion to compel, no state permits wholly unrelated, non-signatory parties to compel arbitration under the kind of language in the applicable arbitration agreements. And, even if they could, NAR has not joined the motion to compel so at minimum every class member retains a litigable claim against NAR. This means that there is no class member who does not have a claim they can pursue in this Court, making exclusion from the class—or a stay of their claims— inappropriate.

The HSA Defendants' "just trust us" approach to arbitrability falls well short of the legal showing required to compel arbitration. The approach also disregards entirely the specific questions the Court charged the parties with answering in the class certification order. Including because this is HSA's *third* shot at raising these issues after Plaintiffs have previously flagged the deficiencies in their arguments, this Court should deny HSA's motions to compel.

## BACKGROUND

The HSA Defendants are HomeServices of America, Inc., HSF Affiliates, LLC, BHH Affiliates, LLC, and the Long & Foster Companies, Inc. HomeServices of America, Inc. is a

holding company that owns certain real estate brokerage companies, in addition to being the indirect 100% owner of HSF Affiliates, LLC. ECF No. 200 ¶ 34. HSF Affiliates, LLC, is a holding company that owns BHH Affiliates, LLC. *Id.* BHH Affiliates, LLC, is the franchisor of the Berkshire Hathaway HomeServices real estate franchise network. *Id.* Long & Foster Companies, Inc., is a holding company whose holdings include Long & Foster Real Estate, Inc., a residential real estate brokerage. *Id.*

Around a dozen subsidiaries that are indirectly owned by HomeServices of America, Inc., operate in the Covered MLSs. These include companies like Edina Realty, Fox & Roach, and Ebby Halliday. Throughout this litigation, the HSA Defendants have sought to distance themselves from the operation of these subsidiaries. For example, the HSA Defendants' November 22, 2022 interrogatory responses state that the HomeServices Defendants:

> are either (i) holding companies or (ii) franchisors that simply have contractual franchise arrangements with certain brokerages who have chosen to license their brand. The underlying nonparty real estate brokerage companies (*i.e.*, those that are subsidiaries or franchisees) provide services through thousands of independent contractor sales agents. The Corporate Defendants have no relationship with or control over their subsidiaries or franchisees' independent contractor agents.

The HomeServices Defs' Supp. Objs. & Resps. to Pltfs' Second Set of Interrogatories to the Corporate Defs. 13. HSA and its subsidiaries' witnesses have repeatedly asserted that the HSA Defendants do not control the policies or behavior of the brokerage subsidiaries. For example:

> HSoA brokerage subsidiaries are independently operated. . . . Defendant L&F Companies is a holding company, indirectly owned by HSoA, that itself owns various brokerage subsidiaries in the mid-Atlantic region. Those subsidiaries are independently operated. . . . Indeed, most Independently Operated Affiliates entered into the real estate brokerage business (including often as "family-run" businesses) long before they had any affiliation with any of the [HomeServices Defendants]. Those brokerages operated their business as independent companies based on policies and procedures that they developed over the years and as the real estate market in their geographic area evolved.

*Id.* at 19-21. The HSA Defendants assert this is true with respect to setting listing commissions:

> HSoA does not direct, and has not directed, its brokerage subsidiaries or their sales agents regarding the handling of cooperative offers of compensation or whether or how to set minimum commission policies. The same is true for L&F Companies with respect to the brokerage companies that it owns. Real estate commission policy is something that the operating companies determine independently, a reality that is reflected in the fact that their policies are varied and differ from one to another.

*Id.* at 35; *see also id.* at 39-40 (asserting that the HomeServices Defendants "do not direct Independently Operated Affiliate policies"). HSA even insisted on presenting two separate 30(b)(6) witnesses for Long & Foster Companies, Inc.—one to answer on behalf of Long & Foster Companies, Inc., and one to answer on behalf of Long & Foster Real Estate, Inc. (the subsidiary whose agreements the HSA Defendants are now seeking to enforce).

Plaintiffs alleged in their complaint that the HomeServices Defendants "require[e their] franchisees and realtors to comply with NAR rules and regulations, including the Buyer Broker Commission Rule." ECF No. 84 ¶ 118. And as Plaintiffs explained in their motion for class certification, HSA and the other Corporate Defendants "participate in the conspiracy by requiring their brokerages, franchisees, or affiliated agents to join a local Realtor association, participate in an MLS, or follow the Code of Ethics, each of which entails an obligation to comply with and enforce the Challenged Restraints, among other NAR rules." ECF No. 403, at 6. This illustrates that the HSA Defendants impose the anticompetitive conspiracy on their brokerages, franchisees, and affiliated agents. But Plaintiffs have never argued that the brokerages or franchisees are the agents or corporate alter egos of the HSA Defendants. No HSA brokerage or franchisee is a party to this litigation.

The subsidiaries take different approaches to the listing agreements provided by agents to their homeseller clients. According to the HSA Defendants, some subsidiaries "instruct" their agents to use a form listing agreement provided by the company, which may contain an arbitration provision. *See, e.g.*, ECF No. 404-2, at 2. Other subsidiaries' agents use their own listing

agreements or standard agreements that do not contain mandatory arbitration provisions, and the company supposedly "instructs" the agents to offer a standalone arbitration agreement addendum. *See, e.g.*, ECF No. 404-10, at 2. The language of each listing agreement or addendum differs from subsidiary to subsidiary. And the arbitration language used by some individual subsidiaries has changed over recent years. *See, e.g.*, ECF No. 404-6, at 2. The subsidiaries say that the listing agreements executed by individual class members "should" include arbitration language, but neither they nor the HSA Defendants have offered evidence that any class members' actual, executed listing agreements do contain such language. What the agreements share across the board is that HomeServices of America, Inc., HSF Affiliates, LLC, BHH Affiliates, LLC, and the Long & Foster Companies, Inc. are not signatories of any of them.

The HSA Defendants first raised arbitration issues in their motion to strike class allegations, filed in December 2020. *See* ECF No. 205. The Court denied that motion as premature. *See* ECF No. 256. The HSA Defendants next raised arbitration issues in their opposition to class certification, contending that the class definitions should exclude members whose listing agreements contained arbitration provisions. *See* ECF No. 403, at 51-52. The Court granted certification of two classes on March 29, 2023. *See* ECF No. 403. In so doing, the Court noted the arbitration issues the HSA Defendants raised but observed that "[n]either Plaintiffs nor Defendants grapple with these important factual and legal differences [regarding state law and contract language] in any real depth." *Id.*, at 53. The Court therefore directed HSA to move by separate motion if it "wishes to narrow one or both classes." *Id.* And the Court made clear: "[O]f course, the parties' briefs in support of that motion should be responsive to the concerns laid out by the Court here." *Id.*

The HSA Defendants filed three motions to compel arbitration on April 7, 2023. One motion addresses subsidiary agreements that HSA contends delegate threshold arbitrability issues. *See* ECF No. 405 ("Delegation Mot."). Another motion addresses the particular arbitration clause that Long & Foster Real Estate, Inc., included in a form arbitration addendum from July 2019 to December 2021. *See* ECF No. 406 ("Long & Foster Mot."). The third motion addresses subsidiary agreements that HSA admits do not delegate threshold arbitrability issues. *See* ECF No. 407 ("Non-Delegation Mot."). (The HSA Defendants do not move to compel arbitration of any class members who signed listing agreements with an HSA franchisee.) Plaintiffs discuss each subsidiary arbitration clause raised in the three motions, with reference to the applicable state's law, below. Plaintiffs also attach, as Appendix A, a chart summarizing the different clauses, the applicable state's law, and the reasons non-signatories cannot compel arbitration for each. The remaining Corporate Defendants filed a motion to compel relying on the HSA subsidiary arbitration clauses on April 14, 2023, which NAR joined in part. Plaintiffs file their opposition to that motion concurrently and incorporate it by reference here.

## **ARGUMENT**

### I. THE HSA DEFENDANTS OFFER NO EVIDENCE THAT ANY CLASS MEMBER SIGNED AN AGREEMENT CONTAINING AN ARBITRATION CLAUSE

The HSA Defendants submit no evidence that a single class member signed an arbitration agreement, much less that *every* class member who sold a home with every subsidiary during the periods asserted in the HSA motions did so. On this basis alone, their motions fail. The party seeking to compel arbitration "has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for *each* [class member] it seeks to exclude." *Bigger v. Facebook*, 947 F.3d 1043, 1050-51 (7th Cir. 2020) (emphasis added). Courts may not "simply take a[ Defendant] at its word when it says certain [plaintiffs] entered valid arbitration agreements." *Id.*

7

And, because this is a question about whether an agreement to arbitrate exists, it is indisputably one for the Court to decide. *See* 9 U.S.C. § 4.

None of the listing agreements the HSA Defendants proffer as evidence of arbitrability is signed. *See* ECF Nos. 206-02 to 206-12; 404. Nor do the declarations attaching the exemplar agreements state which or how many class members signed such agreements. *Id.* They do not even state that *any* such agreements were signed without modification. Instead, the language of the declarations is carefully couched in hypothetical terms. *See, e.g.*, ECF No. 404-2, at 3 ("[E]very Fox & Roach listing agreement since at least November 2013 for residential property listed in Delaware and Pennsylvania *should* contain a broad, binding arbitration requirement.") (emphasis added); ECF No. 404-3, at 2 ("[E]very Ebby Halliday listing agreement executed in or after October 2018 *should* contain a clause requiring arbitration of disputes.") (emphasis added); ECF No. 404-4, at 2 ("[F]or every Lovejoy Realty listing agreement executed in or after April 2019, the listing was required to use the then-operative listing agreement and addendum" containing an arbitration provision); ECF No. 404-5, at 2 (same for Midwest Preferred); ECF No. 404-6 (same for Edina Realty); ECF No. 404-7, at 2 ("[E]very EWM listing agreement executed after August 2018 *should* contain a provision requiring arbitration of disputes.") (emphasis added); ECF No. 404-9, at 2 ("[E]very Long Realty listing agreement for residential real estate listed on a Covered MLS executed after January 2014 *should* contain a clause requiring arbitration of disputes."); Furthermore, some of the listing agreements do not require arbitration, but rather make it elective. *See* ECF 206-6, at 10 (Edina Wisconsin listing agreement dispute resolution section states that "The parties understand that if there is a dispute about this Listing or an alleged breach, and the parties cannot resolve the dispute by mutual agreement, the parties *may consider judicial resolution in court or may consider alternative dispute resolution*.") (emphasis added); ECF No.

404-8, at 2 (Florida Realty's listing agreement provides for opt-in arbitration, and agents are "instructed . . . to request" that homeowners opt in). There is likewise no evidence of how frequently class members in fact opted into such provisions. Other listing agreements do not themselves contain arbitration clauses, but are supposed to be accompanied by a separate arbitration agreement. *See* ECF No. 404-10, at 3 ("[E]very listing agreement executed by Preferred Carolinas in or after January 2014 *should* contain a clause requiring arbitration of disputes *or* be accompanied by a separate agreement requiring the same.") (emphasis added); ECF No. 404-12, at 2 ("[E]very Long & Foster listing agreement executed in or after July 2019 *should* be accompanied by an executed addendum requiring arbitration of disputes."). The HSA Defendants again offer no evidence of how frequently such addenda were actually signed by class members.

Accordingly, the HSA Defendants have failed to meet their burden of showing that any class member signed an arbitration agreement.

## II. THERE IS NO CLEAR AND UNMISTAKABLE EVIDENCE THAT THE PARTIES DELEGATED QUESTIONS OF NON-SIGNATORY ARBITRABILITY

The HSA Defendants concede that many of their subsidiary listing agreements and addenda do not delegate arbitrability and, thus, that this Court has authority to determine whether those agreements may be enforced by non-signatories. *See* ECF Nos. 406, 407. With respect to certain other subsidiary listing agreements, however, the HSA Defendants assert that those agreements or addenda delegate arbitrability questions to the arbitrator: Ebby Halliday from October 2018-present, Lovejoy from April 2019-present, Midwest preferred from April 2019-present, Edina Minnesota from 2014-present, Edina Wisconsin from April 2019-March 2023, EWM from August

2018-November 2020, Florida Realty from 2019-present, and Preferred Carolinas from 2014-present. Delegation Mot. 15.[1]

It is uncontested that none of the HSA Defendants seeking to enforce these agreements were signatories to the contracts that they claim delegate arbitrability. Most of these agreements include language that, at most, delegates the arbitrability only of disputes between the contracts' "parties" or signatories. HSA nevertheless asserts that the Court "possesses no power" to determine whether non-signatories can enforce these delegation clauses. In doing so, HSA ignores the vast weight of authority holding to the contrary. Delegation Mot. 9. HSA also ignores the specific language of the particular delegation clauses at issue here, which by their own terms limit the scope of delegation.[2]

"The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)

---

[1] HSA also includes Fox & Roach from June 2022-present, and Long & Foster from December 2021-present. These listing agreements did not apply during the damages class period certified by the Court. *See* ECF No. 403, at 53. While the Court also certified a 23(b)(2) class through the present, *id.* at 54, any injunctive relief obtained by this class will apply to the same MLSs and regions regardless whether a small minority of class members doing business with these subsidiaries is excluded.

[2] Incorporation of the AAA/JAMS rules or language delegating questions of "interpretation, enforcement, or breach" does not necessarily signal an intent by the contracting parties to delegate threshold questions for their own disputes to the arbitrator—particularly where, as in some of the subsidiary clauses, the arbitral rules are presented only as one possible option. Among other things, courts have held that the delegation inquiry is context-specific, and incorporation of AAA or JAMS rules does not signal delegation for consumer contracts. *See, e.g.*, *Meadows v. Dickey's Barebecue Restaurants, Inc.*, 144 F. Supp. 3d 1069, 1078-79 (N.D. Cal. 2015); *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 555 (D. Md. 2019). But because this language has no bearing on the question whether the contracting parties intended to delegate threshold questions for disputes with non-signatories, as discussed *infra*, it is unnecessary to address the issue in resolving these motions.

(cleaned up); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995) ("Courts should not assume that parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.")."In this manner, the law treats silence or ambiguity about the question *who* (primarily) should decide arbitrability differently from the way it treats silence or ambiguity about the question *whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement—for in respect to this latter question the law reverses the presumption" in favor of arbitrability. *First Options*, 514 U.S. at 944-45 (cleaned up).

Following this direction, appellate and district courts around the country have rejected the argument that delegation clauses necessarily preclude courts from deciding contract-formation issues, including whether a signatory has agreed to arbitrate or delegate arbitrability with a non-signatory. *See, e.g.*, *K.F.C. v. Snap Inc.*, 29 F. 4th 835, 837 (7th Cir. 2022) ("Even the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate."); *CCC Intelligent Sols. Inc. v. Tractable Inc.*, 36 F. 4th 721, 723 (7th Cir. 2022) ("Arbitration is contractual, and the court found that this contract provides rights to the named parties exclusively."); *Newman v. Plains All Am. Pipeline, L.P.*, 23 F. 4th 393, 398 (5th Cir. 2022) ("[D]eciding an arbitration agreement's enforceability between parties remains a question for courts . . . The parties cannot delegate disputes over the very existence of an arbitration agreement.") (cleaned up); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) ("Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable."); *Lavigne v. Herbalife, ltd.*, 967 F.3d 1110, 1118 (11th Cir. 2020) ("The [FAA] requires a court to send threshold questions of arbitrability to an arbitrator only when the parties have agreed to do so. Because there was no

contract, the aggrieved distributors have not agreed to anything with the top distributors. Consequently, the district court was correct to resolve the motion to compel arbitration instead of immediately sending it to an arbitrator."); *Pogue v. Chisholm Energy Operating, LLC*, 2021 WL 979726, at *7 (D.N.M. Mar. 16, 2021) ("Many courts agree an arbitration clause that does not mention arbitration against third parties does not clearly and unmistakably show a plaintiff agreed to arbitrate the arbitrability of claims against a non-signatory.") (collecting cases).[3]

As the court stated in *GNH*: "The Court, guided by federal caselaw, cannot conclude that there is clear and unmistakable evidence that *these* parties (Plaintiff on the one hand, and the Non-Signatory Defendants on the other hand) agreed that an arbitrator should decide arbitrability with respect to Plaintiff's claims against them. How could there be such evidence when Plaintiff and the Non-Signatory Defendants have not signed an agreement with each other containing an arbitration provision with respect to any such claims?" 2020 WL 4287358, at *5 (collecting cases).

These courts have rejected the specific arguments the HSA Defendants make here. First, courts hold that even incorporation of the AAA rules or other language about delegation does not preclude the court from deciding whether a non-signatory can enforce the contract. *See, e.g.*, *Lavigne*, 967 F.3d at 1117; *Staley*, 2021 WL 4972628, at *1-2; *Goergen*, 2023 WL 142911, at *3. Second, courts distinguish the cases on which HSA relies. In *O'Connor*, another court in this District discussed the very same cases HSA cites—*Blanton*, *Eckert/Wordell*, *De Angelis*, and

---

[3] *See also, e.g.*, *Giron v. Subaru of Am., Inc.*, 2022 WL 17130869, at *4 (N.D. Ill. Nov. 21, 2022); *O'Connor v. Ford Motor Co.*, 2023 WL 130522, at *6 (N.D. Ill. Jan. 9, 2023); *GNH Grp. v. Guggenheim Holdings, LLC*, 2020 WL 4287358, at *5 (D. Del. July 27, 2020); *Schoenfeld v. Mercedes-Benz USA, LLC*, 532 F. Supp.3d 506, 511 (S.D. Ohio 2021); *SBMH Grp. DMCC v. Noadiam USA, LLC*, 297 F. Supp. 3d 1321, 125 (S.D. Fla. 2017); *Johnson v. Parsley Energy Operations, LLC*, 2022 WL 2027963, at *3 (W.D. Tex. May 3, 2022); *Nat'l Oilwell Varco, L.P. v. Sadagopan*, 2018 WL 27634, at *3 (S.D. Tex. Jan. 3, 2018); *Vincent v. BMW of N. Am.*, 2019 WL 8013093, at *4 (C.D. Cal. Nov. 26, 2019); *Goergen v. Black Rock Coffee Bar, LLC*, 2023 WL 142911, at *3 (D. Or. Jan. 10, 2023).

others—but rejected them as inconsistent with Seventh Circuit law. 2023 WL 130522, at *4-6; *see also Schoenfeld*, 532 F. Supp. 3d at 509-510 (rejecting the persuasiveness of *De Angelis*).[4] The Eighth Circuit and district court in *Burnett* likewise dismissed the HSA Defendants' similar arguments based on *Eckert/Wordell*. *See Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853 (8th Cir. 2021); *Sitzer v. Nat'l Ass'n of Realtors*, 2020 WL 2787725, at *3-4 (W.D. Mo. Apr. 10, 2020); *Burnett v. Nat'l Ass'n of Realtors*, 615 F. Supp.3d 948, 958-59 (W.D. Mo. 2022).

And the Fifth Circuit has explicitly held that *Brittania-U* does not say what HSA thinks it says. In *Newman*, the court rejected the argument that "*Brittania-U* supports that deciding an arbitration agreement's enforceability between the parties is an arbitrability question, which would make it delegable to an arbitrator," observing that *Brittania-U* addressed a particular situation where an agency relationship existed between the signatory and non-signatory, and in any event "what supports [the defendants'] argument is nothing more than some imprecise language." 23 F. 4th at 400; *see also Johnson*, 2022 WL 2027963, at *3 (noting that *Brittania-U* and *Contec* address only circumstances where there is an agency relationship).

*Henry Schein* certainly does not support the HSA Defendants' argument. There, the Supreme Court addressed a question of delegation by the signatory parties, affirming that "To be

---

[4] These cases are in any event inapposite. In *Blanton*, the court did not discuss any narrow contractual language limiting arbitrable disputes to the signatories, and also declined to address the "antecedent question here—namely, whether [the non-signatory] has any right to enforce the *specific* provision of the agreement provision of the agreement in which [the plaintiff] purportedly agreed to arbitrate arbitrability." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, n.1 (6th Cir. 2020). Likewise, in *De Angelis* the court addressed a broad arbitration provision, the non-signatory and signatory were alter egos, and they were both named defendants. 364 F. Supp. 3d 787 (S.D. Ohio 2019). In *Grabowski*, which predated the Seventh Circuit's opinions in *K.F.C.* and *CCC Solutions*, the arbitration clause also applied to claims with "any vendor or third party providing services" for the transaction. 2021 WL 1962379, at *2 (N.D. Ill. May 17, 2021). And the court in *Robertson* relied on cases such as *Brittania-U*, *Contec*, and *Eckert/Wordell* that have been repeatedly limited to their specific facts or otherwise disavowed. *Robertson v. Enbridge (U.S.) Inc.*, 2020 WL 9211171, at *3 (W.D. Pa. Aug. 4, 2020).

13

sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." 139 S.Ct. 524, 530 (2019). Thus, "*Henry Schein* did not change the fundamental requirement that the court must first determine whether *the parties* executed an agreement to arbitrate." *Schoenfeld*, 532 F. Supp. 3d at 510 (collecting cases holding the same). And, on remand, the Fifth Circuit held that where the language of a delegation clause includes a carve-out, there is no "'clear and unmistakable' intent to delegate arbitrability" with respect to disputes that are subject to the carve-out. *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 281–82 (5th Cir. 2019).

The specific language of the delegation clauses HSA seeks to enforce here all have narrow scope that does not encompass claims by nonsignatories—hardly clear and unmistakable evidence of intent to delegate the arbitrability of claims with nonparties. The Ebby Halliday delegation clause only delegates "any dispute or claim **between the parties to this Agreement**, its interpretation, enforcement or breach" ECF No. 206-3, at 10 (emphasis added). The Edina Minnesota clause is likewise limited to delegating "Any controversy or claim **between the parties to this Exclusive Right to Sell Listing Contract**, its interpretation, enforcement or breach." ECF No. 206-6, at 8. The EWM clause states "**The Parties** agree that any dispute . . . arising out of or related to this Agreement" will be submitted to mediation and then arbitration. ECF No. 206-7, at 6. The Florida Realty clause states that "All controversies, claims, and other matters in question **between the parties** arising out of or relating to this Agreement or the breach thereof" will be sent to mediation and then arbitration under AAA rules "**or other arbitrator agreed upon by the parties**," and goes on to request the initials of the Seller, the Sales Associate, and the applicable Broker. ECF No. 206-8, at 7 (emphasis added). The Lovejoy and Midwest Preferred clauses apply to "disputes, claims, or controversies arising out of or related to this agreement **or the relationship**

**created thereby**" and explains that "Neither **party to this agreement** shall be entitled to join or consolidate claims." ECF No. 206-4, at 4; ECF No. 206-5, at 5 (emphasis added).

Edina Wisconsin purportedly suggested that listing brokers who use their own agreements offer an addendum that includes the same language as the Lovejoy and Midwest clauses. However, the Edina Wisconsin form listing agreement for the Damages Class period plainly does not mandate arbitration, so it is unclear how many—if any—Edina Wisconsin home sellers agreed to arbitrate anything. *See* ECF 206-6, at 10 (listing agreement dispute resolution section states that "The parties understand that if there is a dispute about this Listing or an alleged breach, and the parties cannot resolve the dispute by mutual agreement, the parties **may consider judicial resolution in court or may consider alternative dispute resolution**.") (emphasis added); 16 (listing contract addendum). Preferred Carolinas similarly offers both a form listing agreement, and an addendum it suggests agents use when they offer their own listing agreement. *See* ECF No. 404-10, at 2. The form listing agreements in use during the Class Period have an arbitration clause that applies to "Any Dispute, claim or controversy **between Seller and Broker**" and defines the "parties to the arbitration" as "AAA, the arbitrator, **Broker, and Seller**." ECF No. 206-10, at 11-12; 404-10, at 13. The standalone arbitration addendum applies to "any Dispute, claim or controversy between [seller] and the Company," and defines "Company" as "Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway HomeServices Yost & Little Realty, its affiliates and parent company"; it does not name any of the HSA Defendants. ECF No. 206-10, at 40.

Contract language that expressly limits the scope of delegation to disputes between "the parties" to a contract (or to other specified entities) cannot be considered clear and unmistakable

evidence of an intent to arbitrate with non-parties, much less to delegate arbitrability questions. The *Burnett* court rejected this very argument made by the HSA Defendants based on similar contract language from HSA's Missouri subsidiaries. *See Burnett*, 615 F. Supp. 3d at 958 ("The narrow, party-specific language at issue does not clearly and unmistakably delegate to an arbitrator threshold issues of arbitrability between nonparties, including HomeServices."). Other courts have found the same. *See, e.g.*, *Kramer*, 705 F.3d at 1127; *Lavigne*, 967 F.3d at 1117-18; *Schoenfeld*, 532. F. Supp. 3d at 508; *Pogue*, 2021 WL 979726, at *8; *SBMH*, 297 F. Supp. 3d at 1126; *Vincent*, 2019 WL 8013093, at *4.[5]

Accordingly, the Court can and should determine the threshold question of whether the HSA Defendants, as non-signatories, may avail themselves of any arbitration clauses that apply to the class.

## III. UNDER EACH APPLICABLE STATE'S LAW AND CONTRACT TERMS, THE HSA DEFENDANTS CANNOT COMPEL ARBITRATION

Whether the HSA Defendants, as non-signatories, can compel arbitration based on the proffered arbitration clauses is a question of state law. *See Arthur Andersen LLP v. Carlise*, 556 U.S. 624, 630-31 (2009); *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 750 (7th Cir.

---

[5] The HSA Defendants cite, without analysis, a string of cases that purportedly say otherwise. *See* Delegation Mot. 12 n.12. They do not. Two of the cases involved broad arbitration clauses. *See Robertson*, 2020 WL 9211171, at *1 (arbitration clause applied to "any controversy or claim arising out of or relating to your employment relationship with Employer"); *Cartagena Enters. Inc. v. J. Walter Thompson Co.*, 2013 WL 5664992, at *4 (S.D.N.Y. Oct. 16, 2013) ("[N]othing in the first sentence of the arbitration clause, agreeing to resolve 'any claims or dispute that arises from or is related to the Agreement' by arbitration, limits arbitration to the parties."). The courts in *Contec* and *Brittania-U* determined first whether the non-signatories could enforce the arbitration agreements before going on to delegate threshold arbitrability questions. *See Contec*, 398 F.3d at 209; *Brittania-U*, 866 F.3d at 715. And the court in *Physician Consortium Services* did not delegate arbitrability but conducted a full analysis, under Florida law, of whether equitable estoppel permitted a non-signatory to compel arbitration. 414 F. App'x 240, 242-43 (11th Cir. 2011).

2017). The HSA Defendants do not make any arguments under the applicable states' laws for the subsidiaries that they contend delegate arbitrability issues. They have therefore waived any argument in this regard.[6] Nor do the HSA Defendants provide a choice-of-law analysis explaining which state's law applies to which subsidiary agreements. Nevertheless, because it is clear that arbitration is inappropriate under any potentially applicable state's law, Plaintiffs analyze the issue for each subsidiary based on the geographic scope of its operations in the Covered MLSs.

In addition to the subsidiaries listed above, *see supra* at 9, the HSA Defendants contend that the following subsidiaries have arbitration clauses they can enforce: Long & Foster from July 2019-December 2021, Fox & Roach Pennsylvania from November 2013-June 2022, Fox & Roach Delaware from September 2018-June 2022, EWM from December 2020-present, and Long Realty from 2014-present. *See* Long & Foster Mot. 8; Non-Delegation Mot. 13.

### A. Maryland – Long & Foster

The Long & Foster arbitration clause assertedly offered to agents from July 2019 through "at least" December 2021 is not part of the brokerage's form listing agreement.[7] Instead, it comes in a form addendum that agents are instructed to provide to sellers (again, there is no evidence of

---

[6] The HSA Defendants simply state, in a footnote and without *any* legal analysis, that if the Court determines that it "should decide the arbitrability of the claims in the agreements placed in issue by" the Delegation Motion, "HomeServices would request that HomeServices may enforce the agreements, and therefore compel arbitration"—and then offer to provide "additional briefing [if it] would be helpful." Delegation Mot. 13 n.13. The Court already expressly requested that HSA address the different language of the arbitration clauses and the different states' laws. *See* ECF No. 403, at 52. The HSA Defendants refused to abide by this instruction despite affording themselves 37 pages to brief their arbitration request. They are not entitled to a *fourth* bite at the apple.

[7] As noted above, *see supra* at n. 1, the HSA Defendants also discuss arbitration clauses they say were used after December 2021. These agreements post-date the Damages Class period and would not affect the scope of relief for either class.

17

how frequently the addendum is presented, much less signed). The addendum for the applicable

time period states:

> The following provisions are hereby incorporated into the Listing Contract or Buyer
> Agency Contract ("Contract") between Long & Foster Real Estate, Inc.
> ("Broker/Licensee") and you ("You" or "Consumer") (together, the "Parties"). . . .
> The Parties hereby mutually agree that, other than Excluded Claims, any and all
> claims, disputes, or controversies between them that in any way arise from or relate
> to (i) the Contract, (ii) the real estate transaction relating to the Contract (the
> "Transaction"); and/or (iii) the services, advertising, disclosures, practices and
> procedures related to the Contract or the Transaction (collectively, a "Claim") shall
> be submitted to arbitration.

ECF No. 206-12, at 11. The addendum goes on to state:

> Non-signatory parent or other affiliated companies of Broker/Licensee shall have
> the benefit of electing to utilize this Agreement to Arbitrate Certain Disputes and
> to Waive Class Actions to the extent that a Claim is asserted against them.

ECF No. 206-12, at 12.

The HSA Defendants may not rely on the latter clause, because such unilateral elections

are unenforceable under Maryland law. *See Noohi v. Toll Brothers*, 708 F.3d 599, 610-11 (4th Cir.

2013) (holding that provision binding only one side to arbitration was unenforceable); *Cheek v.*

*United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656,669 (Md. 2003) (same); *U.S. ex rel.*

*Birckhead Elec., Inc. v. James W. Ancel, Inc.*, 2014 WL 2574529, at *2 (D. Md. June 5, 2014)

(arbitration agreement unenforceable where "[t]he language of the provision unambiguously

obligates Birckhead Electric to arbitrate all claims at the sole discretion of JWA"); *Raglani v.*

*Ripken Pro Baseball*, 939 F. Supp. 2d 517, 523 (D. Md. 2013) (similar).

Nor may the HSA Defendants try to rely on the rest of the arbitration agreement under

principles of equitable estoppel. Maryland law requires a party to show detrimental reliance in

order to prevail on an equitable estoppel theory, including in the context of a non-signatory trying

to compel arbitration. *See Morsberger v. ATI Holdings, LLC*, 2023 WL 2711754, at *3-4 (N.D. Ill.

Mar. 30, 2023) ("Maryland law require[s] a party invoking equitable estoppel, including in the

arbitration context, to demonstrate detrimental reliance."); *Kennedy v. ADF MidAtlantic, LLC*, 2015 WL 6596918, at *5 (D. Md. Oct. 27, 2015) ("To the extent that Defendants may be trying to assert equitable estoppel against Kennedy, they have made no showing of detrimental reliance, a necessary element under Maryland law to invoke the doctrine, including in the arbitration context."); *Dickerson v. Longoria*, 995 A.2d 721, 742-43 (Md. 2010).

The HSA Defendants have not made any showing of detrimental reliance here. In order to demonstrate detrimental reliance, the HSA Defendants would have had to prove that the individual class members who purportedly executed arbitration agreements with the subsidiary brokerage somehow: (i) "misled" the HSA Defendants in a manner that caused them "injury"; and (ii) that the HSA Defendants "believed and relied on the[se] representations." *Dickerson*, 995 A.2d at 743. The HSA Defendants have waived this issue by failing to demonstrate detrimental reliance in their opening brief. But even had the HSA Defendants addressed this issue, showing detrimental reliance would be impossible given that the HSA Defendants admit that the class members they seek to arbitrate against have never made any representations to them at all. *See Burnett v. NAR*, No. 4:19-cv-332, Dkt. 218, at 7 (W.D. Mo. Feb. 28, 2020) (HSA acknowledging that "neither the named plaintiffs nor any purported class member has any contract or direct relationship with HomeServices relevant to the claims asserted").

Additionally, the HSA Defendants do not provide any analysis of the arbitration language under Maryland law. Instead, they simply argue that each of them can elect to enforce the arbitration clause as unnamed "parent[s]" or "affiliated companies" of Long & Foster Real Estate, Inc. Long & Foster Mot. 7-8. But this is plainly insufficient under Maryland precedent and the cases the HSA Defendants do cite are inapposite. *See Smith v. Bank of Am., N.A.*, 2019 WL 11910946 (N.D. Ill. May 15, 2019) (applying Illinois law to a contract with a mutual arbitration

clause); *Thompson v. Sutherland Global Servs., Inc.*, 2019 WL 1470238 (N.D. Ill. Apr. 3, 2019) (same); *Bakon v. Rushmore Serv. Ctr. LLC*, 2017 WL 2414639 (E.D.N.Y. June 2, 2017) (applying South Dakota and New York law to a mutual arbitration clause); *Alvarez v. Experian*, 2023 WL 2519249 (E.D.N.Y. Mar. 15, 2023) (applying California and New York law to a mutual arbitration clause).

## B. Virginia – Long & Foster

HSA asserts that the same Long & Foster addendum was used in Virginia during the July 2019-December 2021 time period. *See* ECF No. 404-12, at 2. While the addendum refers to "Non-signatory parent or other affiliated companies," none of the HSA Defendants are named in the contract language and none of them are signatories to the contract. As with Maryland, the HSA Defendants cannot enforce the arbitration addenda as non-signatories because they have not shown detrimental reliance. *See Tuomala v. Regent Univ.*, 477 S.E.2d 501, 506 (Va. 1996) ("The doctrine of equitable estoppel is not available unless the party advancing the claim can show that he has acted in reliance upon an action or statement of the party he seeks to bind."); *Judge v. Unigroup, Inc.*, 2017 WL 3971457, at *5 (M.D. Fla. Sept. 8, 2017) ("The defendants cannot compel arbitration under Virginia law because the defendants present neither fact nor law establishing detrimental reliance."). Nor do the HSA Defendants discuss any applicable Virginia caselaw. *See* Long & Foster Mot. 7-8; *supra*, at 19.

## C. District of Columbia – Long & Foster

HSA asserts that the Long & Foster addendum was also used in the District of Columbia during July 2019-December 2021. *See* ECF No. 404-12, at 2. Again, none of the HSA Defendants are named in the contract language and none of them are signatories to the contract. It is not clear whether D.C. law permits non-signatories to enforce arbitration clauses, whether under an

equitable estoppel theory or otherwise. Certainly, the HSA Defendants cite no such cases. Even if they did, the HSA Defendants' motion would again fail for lack of a showing of detrimental reliance. *See Nolan v. Nolan*, 568 A.2d 479, 484 (D.C. 1990) ("A party raising equitable estoppel must show that he changed his position prejudicially in reasonable reliance on a false representation or concealment of material fact which the party to be estopped made with knowledge of the true facts and intent to induce the other to act."); *RFB Properties II, LLC v. Deutsche Bank Trust Co.*, 247 A.3d 689, 695 (D.C. 2021) (similar).

Equitable estoppel is likewise unavailable because Plaintiffs' antitrust conspiracy claims do not seek to enforce terms or obligations of the listing agreement. *See DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 29-30 (D.D.C. 2002) ("Regardless of the availability of the doctrine in this Circuit, none of the four remaining claims, for the misappropriation of trade secrets, civil conspiracy, and the federal copyright claims are 'inextricably intertwined' with contractual obligations . . . [Plaintiff's claims do not] arise out of that contract, but rather from state and federal statutes and common law."). Yet again, the HSA Defendants cite no D.C. law holding otherwise. *See* Long & Foster Mot. 7-8; *supra*, at 19.

### D. Minnesota – Edina, Midwest Preferred

As the Minnesota Supreme Court has observed, "Generally, arbitration clauses are contractual and cannot be enforced by persons who are not parties to the contract." *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 356 (Minn. 2003). The Eighth Circuit has concluded, based on *Onvoy*, that the Minnesota Supreme Court would recognize equitable estoppel as a basis for a non-signatory to compel a signatory to arbitrate but only under narrow circumstances that do not apply here. *See In re Wholesale Grocery Prod. Antitrust Litig.*, 707 F.3d 917 (8th Cir. 2013).

Two HSA subsidiaries operate in Covered MLSs in Minnesota: Edina Realty and Midwest Preferred. During the applicable time period, the Edina Minnesota listing agreement arbitration clause states:

> Any controversy or claim between the parties to this Exclusive Right to Sell Listing Contract, its interpretation, enforcement or breach . . . shall be settled by binding arbitration administered by and under the rules of National Center for Dispute Settlement.

ECF No. 206-6, at 8.

The Midwest Preferred arbitration clause states:

> Any disputes, claims, or controversies arising out of or related to this agreement or the relationship created thereby, including but not limited to claims with a statutory basis or those arising from tort, which fall into the jurisdiction of small claims courts shall be resolved in the applicable small claims' courts. Any other such disputes, claims or controversies, including those involving the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Minneapolis, Minnesota . . . Neither party to this agreement shall be entitled to join or consolidate claims or disputes by or against the other . . . .

ECF No. 206-5, at 5.

Both of these clauses limit their scope to "the parties" or each "party." "In analyzing arbitration clauses, courts should enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Onvoy*, 669 N.W.2d at 349. This means that a non-party or non-signatory, like the HSA Defendants, is not covered by the plain language of the clauses and cannot enforce them, even under an estoppel theory. *See Adherent Labs., Inc. v. DiPietro*, 2018 WL 3520843 (Minn. Ct. App. July 23, 2018) (non-signatories could not compel arbitration where arbitration clause applied to disputes between named parties).

Even if the clauses were read more broadly, the HSA Defendants would have to show that Plaintiffs' claims are "so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement." *In re Wholesale Grocery*,

707 F.3d at 923 (internal quotation marks omitted). They cannot do so here, because Plaintiffs' "antitrust conspiracy claims do not involve violation of the terms of the contract, the face of the contract does not provide the basis for the alleged injuries, and there is no evidence that the contract anticipated the precise type of relationship giving rise to the claims." *Id.*, at 924.

Plaintiffs do not contend that the selling brokers, much less the HSA Defendants, breached any terms of the listing agreements; rather, the gravamen of their claims is that the HSA Defendants—along with the other defendants—conspired to implement anticompetitive rules that led to supracompetitive commission rates. Even if the HSA Defendants conspired with subsidiary brokerages like Edina and Midwest Preferred, "merely alleging that a non-signatory conspired with a signatory is insufficient to invoke equitable estoppel, absent some intimate and intertwined relationship between the claims and the agreement containing the arbitration clause." *Id.*, at 923. Note that the Eighth Circuit rejected the non-signatories' equitable estoppel argument for antitrust conspiracy claims in *In re Wholesale Grocery* despite the fact that the arbitration clauses were much broader than the ones here, covering "all disputes including but not limited to those arising out of or relating to any agreement between the parties." *Id.* at 926 (Benton, J., dissenting).

Accordingly, the HSA Defendants cannot compel arbitration of any class member who signed an arbitration agreement with Edina or Midwest Preferred governed by Minnesota law.

### E.  Wisconsin – Edina, Lovejoy Realty

Both Edina and Lovejoy Realty operate in Covered MLSs in Wisconsin. The HSA Defendants are not signatories to any listing agreements with these subsidiaries containing arbitration clauses (and, as noted above, the Edina Wisconsin listing agreements do not even include a mandatory arbitration provision, *supra* at 14-15). To the extent the HSA Defendants try

11475923v1/016286

to enforce the clauses under an equitable estoppel theory, their efforts necessarily fail under Wisconsin law.

The Seventh Circuit has held that "Under Wisconsin law, equitable estoppel requires (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment." *Scheurer*, 863 F.3d at 753 (cleaned up). "Wisconsin courts and federal district courts applying Wisconsin law have rejected equitable estoppel claims when the party seeking to apply estoppel could not show specific facts supporting reasonable and detrimental reliance." *Id.* (collecting cases). Here, as in *Scheurer*, HSA has offered no evidence of reasonable and detrimental reliance.

### F. Florida – EWM, Florida Realty

Both EWM and Florida Realty use listing agreements that are governed by Florida law. *See* ECF Nos. 206-7, at 6; 404-7, at 7. The EWM listing agreement for August 2018-November 2020 states:

> The Parties agree that any dispute, arising prior to or after a closing arising out of or related to this Agreement shall first be submitted to mediation through a neutral agreed upon by the Parties . . . If mediation fails, the Parties agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the American Arbitration Association.

ECF No. 206-7, at 6. The EWM listing agreement for December 2020-present states:

> Owner agrees that any controversies, claims, and other disputes between Owner and Broker arising out of or relating to this Agreement, the breach thereof, or the Property will be submitted to neutral binding arbitration conducted by the American Arbitration Association under its Real Estate Industry Arbitration Rules in the county where the Property is located. Alternatively, Broker and Owner may agree in writing to use another arbitration provider and different rules for the arbitration.

ECF No. 404-7, at 7. And the Florida Realty listing agreements for the applicable time period state:

> All controversies, claims, and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be settled by first attempting mediation under the rules of the American Mediation Association or other mediator agreed upon by the parties . . . **Arbitration**: By initial in the space provided, Seller (__) (__), Sales Associate (__), and Broker (___) agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator agreed upon by the parties.

ECF No. 206-8, at 7; 404-8, at 7.

Under Florida law, a non-signatory seeking to compel arbitration under a theory of equitable estoppel "must show both that [the plaintiff] is relying on the agreement to assert its claims against them and that the scope of the arbitration clause covers the dispute." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017). Any attempt by the HSA Defendants to invoke equitable estoppel fails on both counts.

First, Florida law finds the first condition met only where the plaintiff is seeking to enforce the terms and obligations of the contract, and not where—as here—the plaintiff asserts statutory or non-contractual claims. *See, e.g.*, *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) ("[T]he RICO claims in this case are based on a statutory remedy Congress has provided to any person injured as a result of illegal racketeering activities. This remedy stands apart from any available remedies for breach of contract, and clearly is not intimately founded in and intertwined with the underlying contract obligations.") (cleaned up), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003); *Leidel v. Coinbase, Inc.*, 729 F. App'x 883, 887 (11th Cir. 2018) ("[A] claim arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship. A claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public.") (cleaned up); *It Works Mktg., Inc. v.*

*Melaleuca, Inc.*, 2021 WL 1650266, at *4 (M.D. Fla. Apr. 27, 2021) ("A signatory does not rely on a contract to assert its claims against a non-signatory when the signatory's claims rely on obligations otherwise imposed by law.").

Second, Florida courts resoundingly hold that where an arbitration agreement limits its scope to the "parties" or similar language, non-signatories cannot compel arbitration. *See, e.g.*, *Kroma*, 845 F.3d at 1355 ("Here, the arbitration clause states that 'the Parties agree [to arbitration].' If the Kardashians are not considered 'parties' to the agreement within the scope of the arbitration clause, they cannot use equitable estoppel to compel arbitration of the claims, even if the doctrine were otherwise applicable in this case."); *It Works*, 2021 WL 1650266, at *3 (where contract limited applicability of arbitration provision to "disputes between a Distributor and It Works . . . It Works did not agree to arbitrate claims between itself and non-signatory third parties, and the claims presented against Melaleuca do not fall within the . . . arbitration clause"); *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 768 (Fla. Dist. Ct. App. 2018) ("[T]he arbitration provision generally limited its applicability to disputes 'between the parties' to the arbitration agreement, meaning it would not reach disputes involving the Beck dealership (a nonparty)."). The EWM and Florida Realty agreements each are limited to "the parties" or "Broker"/"Owner." Nonsignatories therefore fall outside the scope.

The HSA Defendants cite a single Florida case to support their argument, but it is easily distinguishable. *See* Non-Delegation Mot. 6-7. The court in *Gunson* addressed "sweeping arbitration clauses" that included language applying the provision to "any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company, affiliated entities, successors, assigns" or "employees, officers, directors, agents, assigns and related third parties." *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1398 (S.D. Fla.

2014). The court noted its "conclusion that equitable estoppel applies is consistent with the language of the Loan Agreements, which clearly contemplates that Gunson agreed to arbitrate not just with the lenders, but also with the lenders' servicers, agents, and affiliated entities." *Id.* at 1403. The same cannot be said here, where the parties to whom the arbitration clauses apply are narrowly defined. And the contracts in *Gunson* had "more than a 'but-for' relationship" with the plaintiff's claims, because they contained the purportedly illegal terms that the defendants should not have enforced.

The HSA Defendants also assert that "[s]cope arguments regarding" language limiting arbitration clauses to particular parties "necessarily collapse into equitable estoppel arguments." Non-Delegation Mot. 13 n.6. But this is flatly contradicted by *Kroma* and the Florida authorities on which it relies. 845 F.3d at 1354.

Accordingly, the HSA Defendants cannot compel arbitration under any contract governed by Florida law.

### G. Pennsylvania – Fox & Roach

The Fox & Roach form listing agreement used in Pennsylvania from November 2013-June 2017 states:

> Seller and Broker/Licensee will submit to mediation all claims, disputes or controversies between Seller and Broker/Licensee that in any way arise from or relate to this Contract and/or the services, advertising, disclosures, practices and procedures related to the foregoing ("Claim"). . . . All Claims, other than Excluded Claims, which have not been resolved by mediation as set forth in 33(a) above shall be submitted to arbitration administered by the American Arbitration Association.

ECF No. 206-2, at 9-10. From June 2017-June 2022 the Fox & Roach form listing agreement stated:

> Seller and Broker/Licensee will submit to mediation all claims, disputes or controversies between Seller and Broker/Licensee that in any way arise from or

relate to this Contract and/or and the services, advertising, disclosures, practices and procedures related to the foregoing ("Claim"). . . . In the event that mediation is unsuccessful in resolving the claim, dispute, or controversy, then the parties hereto agree to be bound by and follow the policies, procedures, and limitations set forth in *Arbitration of Certain Disputes and Waiver of Class Actions*, which is fully incorporated herein by reference and which has been received by Seller.

ECF No. 206-2, at 14. The arbitration addendum stated:

All Claims, other than Excluded Claims, which have not been resolved by mediation as provided for in the Contract shall be submitted to arbitration administered by an arbitrator agreed to by the parties or, in the absence of agreement, by the American Arbitration Association ("AAA"), in lieu of commencing a lawsuit in any state or federal court and/or filing a complaint with any governmental or administrative agency.

ECF No. 206-2, at 38.

The HSA Defendants argue that equitable estoppel permits them, as non-signatories, to compel arbitration. Non-Delegation Mot. 5-13. Under Pennsylvania law, equitable estoppel "allows a non-signatory to bind a signatory where the non-signatory establishes: (1) a close relationship between the entities involved; and (2) the claims against it are intimately founded in and intertwined with the underlying contractual obligations." *Kipp v. Weyerhauser Co.*, 354 F. Supp. 3d 622, 625 (E.D. Pa. 2018) (collecting cases). Notably, this is a conjunctive test.

The HSA Defendants offer no evidence on the first prong; rather, they have spent substantial time and energy in this litigation *disclaiming* a "close relationship" with their subsidiaries. *Supra*, at 4-5; *see also Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 332-33 (E.D. Pa. 2004) ("[I]t seems somewhat disingenuous for the Deutsche Bank Defendants to admit an agency relationship for the purposes of compelling arbitration while simultaneously defending against substantive charges of conspiracy."). And on the second prong, a mere factual or causal relationship between the plaintiff's claims and the contract are not enough; the plaintiff's claims must be seeking to enforce the terms or obligations of the contract. Where, as here, a plaintiff asserts claims related to extracontractual wrongdoing, equitable estoppel does not apply. *See, e.g.*,

28

*Abdurahman v. Prospect CCMC LLC*, 42 F. 4th 156, 161-62 (3d Cir. 2022) (rejecting argument that employment discrimination claims were "intimately founded in and intertwined" with employment contract because "[t]hat argument borrows from common law causation, not contract"). Furthermore, equitable estoppel is particularly inappropriate here where the language of the contracts expressly limits arbitrable claims to those between "Seller" and "Broker/Licensee." *See Kipp*, 354 F. Supp. 3d at 627 (rejecting non-signatory's arbitration request when contract's arbitration provisions applied only to "Buyer" and "Seller").

HSA cites to two Pennsylvania cases in its motion. *See* Non-Delegation Mot. 6. Neither supports its argument. The plaintiff in *Torres* conceded that a "close relationship" existed between the signatory and non-signatory entities and the first prong of the equitable estoppel test was therefore met. *Torres v. CleanNet, USA, Inc.*, 90 F. Supp. 3d 369, 379 (W.D. Pa. 2015). And the plaintiff's claims arose out of the relevant agreement because he had to rely on the contract's terms to prove his claim, namely that "he should have been characterized as an employee rather than an independent contractor." *Id.* at 380. The same was true in *Colon*, where both prongs of the equitable estoppel test were met because the defendants were "a single and joint employer" who had "separate corporate entities [solely] to limit the liability of each of the Defendants" and the plaintiff relied on the contract's terms classifying her employment. *Colon v. Conchetta*, 2017 WL 2572517, at *5-6 (E.D. Pa. June 14, 2017).

## H. Delaware – Fox & Roach

From September 2018 to June 2022, Fox & Roach asserts that it used listing agreements and an arbitration addendum in Delaware with the same language quoted above for Fox & Roach Pennsylvania. ECF No. 206-2, at 29, 34, 38. The HSA Defendants make the same equitable estoppel arguments under Delaware law. *See* Non-Delegation Mot. 5-13. Here, too, these

arguments must fail because the contracts limit the scope of the arbitration clause to disputes between "Seller" and "Broker/Licensee." *See, e.g.*, *BlackBerry Ltd. v. Nokia Corp.*, 2018 WL 1525797, at *3 (D. Del. Mar. 28, 2018) (where contract limited arbitrability to specific parties, "[b]y its terms, the Agreement thus does not compel Plaintiff to arbitrate disputes" with non-parties).

HSA cites a single Delaware case in support of its position. *See* Non-Delegation Mot. 7. But there, the plaintiff "conceded" that equitable estoppel applied, "acknowledging that its allegations against both the [non-signatory and signatory defendants] set forth facts of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *GNH Grp. v. Guggenheim Holdings, LLC*, 2020 WL 4287358, at *7 (D. Del. July 27, 2020). And the plaintiff's claim, which included breach of contract and intentional interference with contract, arose from contractual obligations themselves. *Id.*, at *1. This is not the case here.

## I. Texas – Ebby Halliday

The Ebby Halliday form listing agreement states:

> [A]ny dispute or claim between the parties to this Agreement, its interpretation, enforcement or breach (which includes tort claims arising from fraud and fraud in the inducement), will be settled by binding arbitration pursuant to the rules of the American Arbitration Association (AAA) and by a neutral arbitrator agreed to by the parties.

ECF No. 404-3, at 10. Ebby Halliday operates in Texas, and the listing agreement is governed by Texas law. *Id.*

"No party may be compelled to arbitrate unless they have agreed to arbitrate or are bound by principles of agency or contract law to do so." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 640 (Tex. 2018). Texas courts have narrowly limited the circumstances in which a

non-signatory may invoke an arbitration clause. Where the language of an arbitration clause expressly limits its reach to the parties to the contract, a non-signatory cannot compel arbitration. *See Weingarten Realty Invs. v. Miller*, 495 F. App'x 418, 422 (5th Cir. 2012); *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007).

Nor can a non-signatory rely on an equitable estoppel theory where the plaintiff's claims "stand independently" of the contracts, and "do not seek a benefit from or to enforce provisions or obligations set forth in" the contracts. *VSR Fin. Servs. Inc. v. McLendon*, 409 S.W.3d 817, 833 (Tex. App. 2013); *see also id.* at 832 ("Equitable estoppel is inapplicable when the benefit is merely indirect; that is, when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law.") (cleaned up); *Skyleasing, LLC v. Tejas Avco Inc.*, 2006 WL 2290852, at *4-5 (Tex. App. Aug. 10, 2006) (observing that equitable estoppel is not available "simply because the signatory's claims against the non-signatory touch matters covered by the contract or are dependent upon the contract; instead, the signatory's claims must rely on the terms of the contract") (cleaned up). The Texas Supreme Court has also rejected an equitable estoppel theory based on allegations of "concerted misconduct" between signatories and non-signatories. *In re Merrill Lynch*, 235 S.W.3d at 195 ("Conspiracy is a tort, not a rule of contract law.").

Any attempt by the non-signatory HSA Defendants to enforce the Ebby arbitration clause thus fails on two fronts. First, because the language of the clause explicitly limits arbitrability to disputes or claims "between the parties" to the contract. Second, because Plaintiffs' antitrust claims arise from federal law, and do not seek to enforce any terms or obligations of the contract.

## J. Arizona – Long Realty

Long Realty's form listing agreement for the relevant time period is governed by Arizona law and states:

> Listing Broker and Seller agree to mediate any dispute or claim arising out of or relating to this Agreement in accordance with the REALTORS Dispute Resolution System, or as otherwise agreed. . . . In the event that mediation does not resolve all disputes or claims, the unresolved issues shall be submitted for arbitration.

ECF No. 404-9, at 11.

The HSA Defendants contend they can rely on this language, despite being non-signatories excluded from the plain terms of the contract, based on an equitable estoppel theory. *See* Non-Delegation Mot. 5-13. But the Arizona Supreme Court has never applied equitable estoppel to allow a non-signatory to compel arbitration, and has taken an extremely narrow view of equitable estoppel in other non-signatory contexts. *See Benson v. Casa De Capri Enterprises, LLC*, 502 P.3d 461, 465-66 (Ariz. 2022) (rejecting theory of direct benefits equitable estoppel "as an exception to the general rule that nonparties are not bound by the terms of a contract"); *JTF Aviation Holdings Inc. v. CliftonLarsonAllen LLP*, 472 P.3d 526, 527 (Ariz. 2020) (rejecting the "closely related party doctrine").

In *JTF*, the court described the "closely related party doctrine" as a doctrine that "looks to the relationship between a nonparty and parties to the agreement, as well as the relationship between a nonparty and the agreement itself," and held that it was inconsistent with Arizona law. 472 P.3d at 527, 530. This doctrine is very similar to the theories of equitable estoppel that HSA seeks to invoke here—that there is a close relationship of misconduct between the HSA Defendants and the broker signatories, and a close relationship between the HSA Defendants' alleged misconduct and the listing agreements themselves. *See* Non-Delegation Mot. 8-13. There is therefore no reason to think that Arizona law endorses HSA's theories.

Even if these forms of equitable estoppel were viable under Arizona law, HSA could not compel arbitration. As discussed above, HSA argues that compelling arbitration is warranted here because (1) Plaintiffs' complaint alleges that the named defendants have imposed the anticompetitive restraints at issue on their brokerage subsidiaries, and (2) class members' commissions were set in the listing agreements. Neither ground is sufficient for estoppel to apply, because (1) Plaintiffs allege that Defendants have conspired *with each other* to create the anticompetitive rules that are then implemented through brokers and agents; and (2) Plaintiffs are not seeking to enforce any terms or obligations of the listing agreements. *See Bultemeyer v. Sys. & Servs. Techs., Inc.*, 2012 WL 4458138, at *4 (D. Ariz. Sept. 26, 2012) (rejecting similar arguments).

Moreover, the language of the Long Realty listing agreement expressly limits arbitration to disputes between "Seller" and "Listing Broker." The HSA Defendants are neither. They are therefore excluded from the scope of the arbitration clause. *See, e.g.*, *Isaak v. Mass. Indem. Life Ins. Co.*, 623 P.2d 11, 14 (Ariz. 1981) ("A clear and unambiguous contract must be interpreted according to its terms.").

HSA's two Arizona cases—both of which predate binding Arizona Supreme Court authority rejecting similar estoppel theories—do not support a different result. *See* Non-Delegation Mot. 5-6. In *Sun Valley Ranch*, the arbitration clause did not limit its scope to specific parties, one non-signatory seeking to enforce the arbitration clause was the "alter ego" of a signatory, and claims against another non-signatory were "based, at least in part, on purported violations of the" contract. *Sun Valley Ranch 308 Ltd. v. Robson*, 294 P.3d 125, 134-35 (Ariz. Ct. App. 2012). The court did not adopt a more expansive theory of equitable estoppel that would apply to Plaintiffs' non-contract-based claims here, asserted against parent company and affiliate corporate entities.

And in *ROI Properties*, the court likewise addressed a situation where the arbitration agreement did not name specific parties, enforcement was sought by an "alter ego" of a signatory, and the plaintiff's claims "require[d] an examination of [the non-signatory's] rights and obligations under the note." *ROI Props. Inc. v. Burford Capital Ltd.*, 2019 WL 1359254, at *5-6 (D. Ariz. 2019). Thus, rather than support HSA's position, these cases illustrate that this case is far afield from the limited circumstances where Arizona law would permit non-signatories to compel arbitration.

### K. North Carolina – Preferred Carolinas

Preferred Carolinas is another subsidiary that asserts it uses both a form listing agreement and an addendum offered to agents who use their own listing agreements. ECF No. 404-10, at 2. Once again, HSA offers no evidence of how frequently agents use their own agreements, or whether any arbitration addenda were in fact agreed to by the sellers. The Preferred Carolinas form listing agreements for August 2017-May 2020 and May 2020-July 2021 state:

> Any Dispute, claim, or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association . . . All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA.

ECF Nos. 206-10, at 11-12; 404-10, at 13. The standalone arbitration agreement for August 2017-July 2022 states:

> In this Arbitration Agreement, "Company" means Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway HomeServices Yost & Little Realty, its affiliates and parent company . . . If the Company and I cannot arrive at a mutually agreeable solution, I agree that any Dispute, claim or controversy between me and the Company shall be settled by binding arbitration administered by the American Arbitration Association (AAA) . . . .

ECF No. 206-10, at 40. None of the HSA Defendants are named in the standalone arbitration agreement, nor are they signatories to the addendum.

The HSA Defendants cannot compel arbitration under either type of agreement. They are not signatories, and they are expressly excluded from the scope of the listing agreement language, which is limited to "Seller" and "Broker." An equitable estoppel argument does not change this result because under North Carolina law, a non-signatory cannot compel arbitration of statutory or other non-contract-based claims. *See Epes Logistics Servs., Inc. v. Marcuslund*, 861 S.E.2d 924 (N.C. Ct. App. 2021) ("[W]here the plaintiff's claims are dependent upon legal duties imposed by North Carolina statutory or common law rather than contract law, equitable estoppel does not demand arbitration.") (cleaned up); *Jackson v. Home Depot, USA, Inc.*, 857 S.E.2d 321, 330 (N.C. Ct. App. 2021) ("Jackson's claims do not arise from any alleged violation of the terms or conditions of the Card Agreement, and he does not seek to enforce any provision of the Card Agreement. Therefore, because Jackson is not seeking a direct benefit from the provisions of the Card Agreement, we conclude that the doctrine of equitable estoppel cannot be used to force him to arbitrate his claims.") (cleaned up); *Smith Jamison Constr. v. APAC-Atl., Inc.*, 811 S.E.2d 635, 640 (N.C. Ct. App. 2018) ("Although the existence of the Subcontract between Jamison and APAC provides part of the factual foundation for Jamison's complaint, Jamison's claims against Yates are dependent on legal duties imposed by North Carolina statutory or common law rather than contract law. We conclude that the doctrine of equitable estoppel does not require the Court, under these facts and allegations, to compel Jamison to arbitration its asserted claims against Yates.") (cleaned up).

*     *     *

Under each contract, viewed through the lens of each applicable state's law, none of the HSA Defendants can compel arbitration. Their motions should accordingly be denied.

## IV. ARBITRATION WITH THE HSA DEFENDANTS WOULD NOT LIMIT THE SCOPE OF THE CLASSES

Even if the Court were to find that certain of the subsidiaries' arbitration clauses could be enforced by the non-signatory HSA Defendants, and the HSA Defendants provided evidence that class members had actually signed such agreements, it would not affect the composition of the classes or the scope of HSA's liability in this litigation. Under "the rule of joint and several liability . . . each member of a conspiracy is liable for all damages caused by the conspiracy's entire output." *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632 (7th Cir. 2002). Plaintiffs allege that each HSA Defendant is a co-conspirator in the anticompetitive scheme, and that the HSA Defendants facilitate and perpetrate the conspiracy. ECF No. 84 ¶¶ 102-103. Even if there were class members encompassed by HSA's motions who were required to arbitrate their claims against HSA, those class members can pursue their claims against the non-HSA defendants, who are also jointly and severally liable.[8]

As the court found in *Nitsch v. Dreamworks Animation SKG Inc.*:

[J]oint and several liability defeats Defendants' argument that release agreements will significantly complicate resolution of the major issues of liability in this case. In contrast to a single-defendant case, joint and several liability among Defendants here means that a class member who has signed a release against one Defendant is not precluded from pursuing this action against the other Defendants. As a result, the existence of releases appears to relate primarily to allocation of liability among Defendants, as opposed to liability of the Defendants to the class. Similarly, arbitration agreements are unlikely to preclude class members from proceeding with their claims against other Defendants in the instant case.

315 F.R.D. 270, 314 (N.D. Cal. 2016) (citation omitted).

---

[8] As explained in Plaintiffs' contemporaneous opposition to the other Corporate Defendants' motion to compel, the non-HSA Defendants cannot compel arbitration under the HSA subsidiaries' arbitration clauses. And NAR does not join in that motion as it pertains to the request to compel arbitration, *see* ECF No. 409, at 1 n.1, so regardless of how this Court rules on the arbitration requests, every class member will have a claim against NAR that can be pursued in this Court.

The same holds true here. Thus, no class members' claims will be removed from the scope of this litigation, and no class members' claims should be stayed—as the HSA Defendants vaguely request, without citing any supporting authority. *See* Delegation Mot. 14.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the HomeServices Defendants' motions.

Dated: May 8, 2023                    Respectfully submitted

By: /s/ *Beatrice Franklin*
Beatrice C. Franklin (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Rio S. Pierce (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
riop@hbsslaw.com

Steve W. Berman (Bar No. 3126833)
HAGENS BERMAN SOBOL SHAPIRO LLP

1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
tedw@bhsslaw.com

Daniel Kurowski (Bar No. 6286656)
Jeannie Y. Evans (Bar No. 6296339)
Whitney K. Siehl (Bar No. 6313995)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
dank@hbsslaw.com
jeannie@hbsslaw.com
wsiehl@hbsslaw.com

Carol V. Gilden (Bar No. 6185530)
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
cgilden@cohenmilstein.com

Kit A. Pierson (*pro hac vice*)
Benjamin D. Brown (*pro hac vice*)
Daniel Silverman (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
Leonardo Chingcuanco (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
kpierson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
rbraun@cohenmilstein.com
lchingcuanco@cohenmilstein.com
dsilverman@cohenmilstein.com

*Attorneys for Plaintiffs*